IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**NICOLE LOUISE CHAVEZ,**

    **Plaintiff,**

 **v.**                                                                                                    **No. 16-cv-0560 SMV**

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner of Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum [Doc. 18] ("Motion"), filed on November 21, 2016. The Commissioner responded on February 10, 2017. [Doc. 22]. Plaintiff replied on March 3, 2017. [Doc. 25]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 11]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") impermissibly failed to explain why he rejected a portion of Dr. Mellon's and Dr. Castro's opinions. Accordingly, the Motion will be granted and the case remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four).

### Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

**Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

**Procedural Background**

Plaintiff applied for supplemental security income ("SSI") on January 18, 2012. Tr. 27. She alleged a disability-onset date of October 1, 1996. *Id.* Her claims were denied initially and on reconsideration. *Id.* Plaintiff requested a hearing before an ALJ. *Id.* ALJ Barry O'Melinn held a hearing on January 6, 2015, in Albuquerque, New Mexico. Tr. 27, 44−74. Plaintiff appeared in person and was represented by an attorney. *Id.* The ALJ heard testimony from Plaintiff and an impartial vocational expert, Cornelius J. Ford. *Id.*

The ALJ issued his unfavorable decision on June 24, 2015. Tr. 37. At step one he found that Plaintiff had not engaged in substantial gainful activity since the date she applied for benefits. *Id.* Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two. *Id.* There he found that Plaintiff suffered from the following severe impairments: "obesity; peripheral neuropathy; asthma; diabetes mellitus; headaches; hypertension; status post cellulitis; back and foot disorders; anxiety[;] and an affective disorder." Tr. 29. At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 29–30. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 30–35. The ALJ found that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 [C.F.R. §] 416.967(b) that requires her to lift, carry, push, and or pull 10 pounds frequently and 20 pounds occasionally; stand and or walk for a total of three hours in an eight-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes o[r] scaffolds; frequently balance; and occasionally stoop, crouch and crawl. [Plaintiff] must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., and hazards (machinery,

4

> heights, etc.). [Plaintiff] can understand, carry out and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers and work situations; deal with routine changes in work setting, maintain concentration, persistence and pace for up to and including two hours at a time with normal breaks throughout the workday.

Tr. 30–31 (punctuation in original). At step four the ALJ found that Plaintiff had no past relevant work. Tr. 36. Proceeding to step five, the ALJ considered Plaintiff's RFC, age, education, and work experience, as well as the testimony of the VE. He found that Plaintiff could perform work that exists in significant numbers in the national economy, namely assembly worker, wire cutter, lens inserter, and circuit board screener. Tr. 36–37. Ultimately, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period, and he denied the claims. Tr. 37.

Plaintiff requested review from the Appeals Council. She submitted treatment records to the Appeals Council that had not been before the ALJ. Tr. 1–2. The new treatment records all post-dated the ALJ's decision. *See id.* The Appeals Council found that the "new information [was] about a later time[, and therefore did] not affect the [ALJ's decision] about whether [Plaintiff was] disabled beginning on or before June 24, 2015." Tr. 2. The Appeals Council denied Plaintiff's request for review on May 20, 2016. Tr. 1–5. Plaintiff timely filed the instant action on June 11, 2016. [Doc. 1].

## Analysis

Plaintiff fails to show that the Appeals Council erred in declining to consider the treatment records that post-dated the ALJ's decision. Because those records do not qualify as

5

"new, material, and chronologically pertinent," they play no further role in this Court's review of the ALJ's decision. However, remand is warranted because the ALJ erred in failing to explain why he rejected Dr. Mellon's and Dr. Castro's assessment of a moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors. The Court declines to pass on Plaintiff's other alleged errors at this time.

Plaintiff fails to show that the evidence submitted
to the Appeals Council was material and chronologically pertinent.

Plaintiff submitted evidence to the Appeals Council that post-dated the ALJ's June 24, 2015 decision. Tr. 2, 8–22. The evidence comprised: (1) a letter dated March 7, 2016, from Katherine Deutsch, N.P., indicating that Plaintiff had been diagnosed with a pulmonary embolism ("PE") in her right lung on February 26, 2016, and restricting her activities until she was evaluated by a pulmonary practitioner, Tr. 17; (2) what appears to be discharge paperwork from Lovelace Medical Center, dated February 26–29, 2016, showing diagnoses of diabetes mellitus and shortness of breath, Tr. 8–15; and (3) a record from ABQ Health Partners, dated October 14, 2015, which appears to reflect a primary care visit for skin boils, Tr. 18–22. The Appeals Council determined that this evidence was not chronologically pertinent. Tr. 2 ("This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before June 24, 2015."). Plaintiff argues that these records, and Ms. Deutsch's letter in particular, should have been included in the record and considered by the Appeals Council. [Doc. 18] at 23–24.

Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to de novo review. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003).

Additional evidence should be considered only if it is new, material, and chronologically pertinent. 20 C.F.R. § 416.1470(b). Evidence is new "if it is not duplicative or cumulative," and material "if there is a reasonable possibility that it would have changed the outcome." *Threet*, 353 F.3d at 1191 (alterations and internal quotation marks omitted). Evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ, i.e., the period on or before the date of the ALJ's decision. *Chambers*, 389 F.3d at 1142.

In *Padilla v. Colvin*, the Tenth Circuit Court of Appeals gave guidance on what constituted "chronologically pertinent" evidence. 525 F. App'x 710, 712 n.1 (10th Cir. 2013). *Id.* The court did not require evidence newly submitted to the Appeals Council necessarily to pre-date the ALJ's decision in order to qualify as chronologically pertinent. *Id.* Rather, the court focused on whether the new evidence was pertinent to the issues that had been before the ALJ. *See id.* The court found, in relevant part:

> [T]he psychological report corroborates an anxiety diagnosis reported by [the plaintiff's] treating doctor, . . . prior to the hearing, as well as [the plaintiff's] hearing testimony. Meanwhile, his intellectual functioning evaluation relates to and augments [the treating doctor's] earlier report that he could not read or write. As to the audiological report, [the plaintiff] identifies the fact that he testified about his hearing loss during the hearing before the ALJ.

*Id.*; *see also Chambers*, 389 F.3d at 1142–44 (holding that evidence dated five months after the ALJ's decision was too temporally remote to qualify under § 416.1740, where it suggested a condition that had never been presented before).

If the Appeals Council fails to consider qualifying new evidence, the case should be remanded so that the Appeals Council may reevaluate the ALJ's decision in light of the complete

7

evidence. *Threet*, 353 F.3d at 1191. However, if the evidence submitted to the Appeals Council does not meet all three requirements, then the Appeals Council does not consider it, and it "plays no role in judicial review." *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011).

There is no dispute that the evidence at issue here is new; it did not exist when the ALJ issued his decision. Plaintiff argues that the evidence is also material and chronologically pertinent.[4] The Court is not persuaded.

Plaintiff fails to show that the new records submitted to the Appeals Council are material or chronologically pertinent. *See* § 416.1470(b). Plaintiff offers these records to show that she was diagnosed with a PE in February of 2016. But that was eight months after the ALJ issued his decision. Of course, *Padilla and Chambers* make clear that the date of the records does not necessarily control. The question is not solely when the records are dated; the question is whether they relate to the time period at issue before the ALJ.

Plaintiff argues that the PE diagnosis "shows that [her] shortness of breath was not just a passing symptom, but was indicative of a serious, indeed life-threatening, condition[.]" [Doc. 18] at 24. Although Plaintiff makes this argument, there is nothing in the record that connects the PE diagnosis in February 2016 to the shortness of breath that the ALJ assessed. The Court is aware that shortness of breath is a symptom of PE. But it is also a symptom of other conditions, including asthma. It is possible that the two are connected, but that is not apparent

---

[4] Plaintiff also argues that "[t]he Appeals Council's finding that the evidence was not material because it was 'about a later time' was an incomplete analysis under *Threet*, 353 F.3d at 1191." *Id.* The Court rejects this cursory argument. Whether the evidence qualifies under § 416.1470 is a question of law that this Court reviews de novo. *Krauser*, 638 F.3d at 1328. The Court is not aware of any authority suggesting that remand is warranted if the Appeals Council's analysis is "incomplete." In fact, as far as the Court is aware, the Appeals Council is under no duty to explain itself. *See Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017) (Appeals Council is not required to articulate its reasons for declining review).

from the record. There is nothing in the record showing that the February 2016 PE diagnosis explained the symptoms Plaintiff reported during the adjudication period. Lacking anything more than the argument of counsel, Plaintiff fails to show that the PE diagnosis or the functional limitations assessed by Ms. Deutsch are chronologically pertinent.

Moreover, the Court is not persuaded that Ms. Deutsch's letter is material. Ms. Deutsch's restrictions on Plaintiff's standing and walking are explicitly tied to the PE diagnosis. There is nothing in the letter (or elsewhere in the record) suggesting that the PE or its resultant functional restrictions would be expected to last for 12 months or result in death. *See* 42 U.S.C. § 1382c(a)(3)(A) (to qualify for SSI, one must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment *which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months*.") (emphasis added). Ms. Deutsch's letter is not material.

Similarly, the Court is not persuaded that the October 2015 record from ABQ Health Partners or the February 2016 record from Lovelace is material or chronologically pertinent. The records are dated four and eight months after the ALJ issued his decision. In addition to being temporally remote, neither record conflicts with the ALJ's RFC assessment. One record reflects a primary care visit for skin boils, and the other appears to be discharge paperwork showing diagnoses of diabetes mellitus and shortness of breath, Tr. 8–15, 18–22. Neither record suggests any functional limitation for Plaintiff that would conflict with the ALJ's RFC assessment. Accordingly, there is no reasonable possibility that either record (or both together) would have changed the ALJ's decision. The October 14, 2015 record from ABQ Health

9

Partners, the February 2016 record from Lovelace, and the March 6, 2016 letter from Ms. Deutsch are not material or chronologically pertinent.  Therefore, the Appeals Council did not err in excluding them from the administrative record.  Having made such determination, the Court clarifies that these records play no further role in this Court's review of the ALJ's decision.

The ALJ erred in weighing the opinions of Dr. Mellon and Dr. Castro.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)).  That is, when assessing a plaintiff's RFC, an ALJ must explain what weight she assigns to each opinion and why.  *Id.*  "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same).  Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).  ALJs are required to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. § 404.1527(e)(2)(ii)).  "If the RFC assessment conflicts with an opinion

from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7. The ALJ's reasons must be specific and legitimate. *Chapo*, 682 F.3d at 1291.

Dr. Mellon and Dr. Castro both agreed that Plaintiff has a moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors. Tr. 85 (Dr. Mellon), Tr. 94 (Dr. Castro). Plaintiff argues that the ALJ failed to incorporate this limitation into the RFC and also failed to explain why not. Therefore, Plaintiff argues, the ALJ failed to apply the correct legal standard in weighing Dr. Mellon's and Dr. Castro's opinions. The Court agrees.

The ALJ affirmatively found that Plaintiff could "respond appropriately to supervision." Tr. 31. This finding directly contradicts the moderate limitation found by both Dr. Mellon and Dr. Castro. Moreover, the ALJ's RFC assessment limits Plaintiff to simple (or unskilled) work. Tr. 31. Unskilled work necessarily requires the ability to "respond appropriately to supervision" on a sustained basis. POMS DI § 25020.010(A)(3). Accordingly, the RFC conflicts with Dr. Mellon's and Dr. Castro's opinions. The ALJ failed to explain how he weighed these opinions or why he rejected the moderate limitation. *See* Tr. 27–37.

Defendant's argument in support of the ALJ's decision is unpersuasive. Defendant points to the agency's Program Operations Manual Systems ("POMS"), which "provides that Section III of the MRFCA, not Section I, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC

11

assessment." [Doc. 22] at 13 (internal quotation marks and brackets omitted). Defendant argues that:

> [i]n Section III of the MRFCA, Drs. Mellon and Castro assessed Plaintiff with the ability to . . . interact adequately with . . . supervisors . . . . The ALJ permissibly relied on the functional limitations described by Drs. Mellon and Castro in [Section III], which stemmed from their findings in [Section I].

*Id.* This is incorrect. The ALJ may not rely on the Section III findings to the exclusion of the Section I findings. The Court rejects the argument.

As a preliminary matter, Dr. Mellon's report does not contain a "Section I" or "Section III." Tr. 84−86. Although Dr. Mellon's report is entitled "Mental Residual Functional Capacity Assessment," Tr. 84, the report is not recorded in the format that has been traditionally used. In the past, a doctor's MRFCA was recorded on a stand-alone form. That form contained sections that were labeled I, II, and III. It is these sections to which Defendant's argument refers.

In this case, however, Dr. Mellon's MRFCA was not recorded on the traditional stand-alone form with Sections I, II, and III. Rather, Dr. Mellon's MRFCA was recorded using the new Electronic Claims Tool ("eCAT"). Tr. 87, 102. The MRFCA, as recorded in eCAT, contains neither a "Section I," nor a "Section III." Tr. 84–86. There simply is nothing on Dr. Mellon's report reflecting any "Section." *Id.* Having reviewed hundreds of these forms in the past, the Court can make an educated guess as to which portions of Dr. Mellon's MRFCA might constitute the Section I and Section III findings in the traditional form. However, the Court cannot agree with Defendant that in this case, the ALJ was permitted to ignore the "Section I" findings when there is no "Section I" in Dr. Mellon's report.

More to the point, there simply is no authority permitting an ALJ to ignore any portion of a doctor's opinion, regardless of whether it is labeled as "Section I" or not. *Silva v. Colvin*, 203 F. Supp. 3d 1153 (D.N.M. 2016) (thoroughly explaining the multiple sources of authority requiring ALJs to evaluate source opinions in their entirety and rejecting the argument that an ALJ may ignore any portion of an opinion). Neither the POMS, nor the regulations, nor the case law permits an ALJ to consider only a doctor's "Section III" findings. *Id.*; *see, e.g., Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th 2007) (reversing where the ALJ failed to incorporate all of the non-examining source's limitations without explanation). The ALJ in this case was required to consider Dr. Mellon's and Dr. Castro's opinions in their entireties.

Defendant acknowledges in a footnote that the ALJ was not permitted to turn a blind eye to a limitation merely because it was recorded in "Section I." [Doc. 22] at 14, n.10. Her position, however, is that Dr. Mellon's Section III findings "stemmed from" his Section I findings, and because the ALJ's RFC assessment was consistent with the Section III findings, there is no error. *Id.* This analysis is incorrect.

If Dr. Mellon's moderate "Section I" limitation could somehow be squared with his "Section III" finding, then Defendant might be right. *See e.g., Carver v. Colvin*, 600 F. App'x 616, 618–19 (10th Cir. 2015) (acknowledging the POMS' distinction between Section I and Section III, but holding that ALJ may not "turn a blind eye to moderate Section I limitations," and ultimately finding that the Section I limitations at issue were accounted for in the Section III findings). But Dr. Mellon's "Section III" finding that Plaintiff could "interact adequately with . . . supervisors" does not square with his "Section I" finding that she is moderately limited in her

ability to accept instructions and respond appropriately to criticism from supervisors. The reversible error here, however, is not the internal inconsistency in Dr. Mellon's report. Rather, it is that the ALJ's RFC assessment fails to account for—in fact, conflicts with—Dr. Mellon's opinion that Plaintiff is moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors. The ALJ was required to explain why he declined to adopt Dr. Mellon's (and Dr. Castro's) opinion on the matter. This he did not do. Tr. 30–35. Remand is therefore warranted.

## Conclusion

The new evidence submitted to the Appeals Council was neither material nor chronologically pertinent. Therefore, there was no error in its exclusion from the record. However, the ALJ erred in failing to explain why he rejected Dr. Mellon's and Dr. Castro's assessment of a moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors. Remand is warranted on that ground, and the Court declines to address Plaintiff's other alleged errors at this time.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum [Doc. 18] is **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**